No. 87,568

In the Matter of KELLY C. BROWN, *Respondent.*

(35 P.3d 864)

Opinion filed December 7, 2001.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was on the formal complaint for petitioner.

*John J. Ambrosio*, of Topeka, argued the cause for respondent, and *Kelly C. Brown*, respondent, appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Kelly C. Brown, an attorney admitted to the practice of law in Kansas, whose last known business address is Topeka, Kansas.

The respondent stipulated that her conduct violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2000 Kan. Ct. R. Annot. 310) (failing to act with reasonable diligence and promptness in representing a client); KRPC 1.4 (2000 Kan. Ct. R. Annot. 320) (failing to keep a client reasonably informed about the status of a matter and promptly complying with reasonable requests for information); and Supreme Court Rule 207 (2000 Kan. Ct. R. Annot. 237) (failing to assist in investigations).

The hearing panel, by clear and convincing evidence, unanimously made the following findings of fact:

"1. . . . The Respondent was admitted to the practice of law in the state of Kansas on September 20, 1986.

"2. Jennifer G. Best and the Respondent attend the same church. On occasion, the pastor of the church has asked the Respondent to provide legal assistance to parishioners at reduced fees. The pastor referred Ms. Best to the Respondent.

"3. In 1997, Ms. Best initially contacted the Respondent regarding post-divorce matters. Thereafter, Ms. Best retained the Respondent to file and prosecute a motion to modify child support. The Respondent and Ms. Best agreed to a fee of $400.00. By September 8, 1998, Ms. Best had paid the fee.

"4. On November 25, 1998, in the District Court of Jefferson County, Kansas, the Respondent filed a motion to enforce and modify child support in behalf of Ms. Best. Thereafter, the Respondent traveled to Oskaloosa, Kansas, and appeared in behalf of Ms. Best at a hearing on that motion.

"5. In April, 1999, the court entered an order reducing the child support payable to Ms. Best because one of the children of the marriage had previously graduated from high school.

"6. However, it was Ms. Best's opinion that her former spouse's income had increased, therefore the child support ordered should be increased. Ms. Best and her former spouse each alleged that the other was concealing income. Because Ms. Best's former spouse is self-employed, it was difficult to determine whether there was unreported income.

"7. Thereafter, the Respondent filed a motion to set aside the order modifying child support and a request for production of documents from Ms. Best's former spouse. That motion was heard in July, 1999. Again, the Respondent traveled to Oskaloosa, Kansas, and appeared in behalf of Ms. Best. At that time, the court ordered that the parties attempt to resolve their dispute *via* mediation. However, because Ms. Best's former spouse refused to participate, mediation was unsuccessful.

"8. After the attempt at mediation failed, the Respondent believed that she had completed her representation of Ms. Best. However, the Respondent failed to make it clear to Ms. Best that the representation had been completed.

"9. Thereafter, beginning in September, 1999, communication between the Respondent and Ms. Best broke down.

"10. The evidence regarding the events subsequent to September, 1999, is somewhat in conflict. Ms. Best testified that, since September, 1999, she has not had any communication with the Respondent regarding the post-divorce child support matters. However, the Respondent's file establishes that, in October, 1999, the Respondent contacted Ms. Ardith Woertz, a domestic relations case manager. The Respondent testified that she questioned Ms. Woertz regarding the procedure to have a case manager appointed in a domestic relations case. Ms. Woertz explained that the Respondent would need to file an appropriate motion and obtain an order appointing a case manager. Finally, although it is unclear when the Respondent discussed the possibility of the appointment of a case manager, it is clear that the Respondent did discuss that option with Ms. Best, as Ms. Best was familiar with the term 'case manager' and with Ardith Woertz' name.

"11. The Respondent did not file a motion to have a case manager appointed in Ms. Best's case. Additionally, the Respondent did not withdraw as attorney of record for Ms. Best.

"12. The Respondent moved her law office and failed to provide Ms. Best with the change of address information. Ms. Best learned of the change of address when a letter was returned with a notation of the new office address.

"13. The Respondent failed to return telephone calls from Ms. Best. The Respondent failed to respond to letters sent by Ms. Best.

"14. On August 14, 2000, Ms. Best forwarded a written complaint to the Office of the Disciplinary Administrator. Thereafter, on August 29, 2000, Frank D. Diehl, Deputy Disciplinary Administrator, sent a letter to the Respondent, notifying the Respondent that Ms. Best filed a complaint and requesting that the

Respondent provide a written response to the complaint. The Respondent failed to respond to Mr. Diehl's letter.

"15. Then, on September 5, 2000, Richard F. Hayse, attorney investigator, wrote to the Respondent requesting that the Respondent provide a written response to Ms. Best's complaint. Again, the Respondent failed to respond.

"16. Mr. Hayse sent a second letter on October 26, 2000. In that letter, Mr. Hayse requested that the Respondent provide her written response no later than November 6, 2000. On November 7, 2000, the Respondent sent a letter to Mr. Hayse requesting that she be permitted to respond to Ms. Best's complaint by November 8, 2000. The Respondent failed to provide a written response by November 8, 2000.

"17. On November 29, 2000, Mr. Hayse sent a note to the Respondent *via* facsimile. In his note, Mr. Hayse reminded the Respondent that she had promised to provide a written response to the complaint. On December 3, 2000, the Respondent wrote to Mr. Hayse, requesting that she have until December 7, 2000, to respond to Ms. Best's complaint. The Respondent never provided a written response to the complaint.

"18. At the hearing on this matter, the Respondent testified that she failed to respond to Ms. Best's letter of complaint because she was overwhelmed, because she was angry, and because she had other things to do. The Respondent assured the Hearing Panel that this misconduct will not occur again. The Respondent testified that a subsequent complaint has been filed against her and that she timely responded to that complaint."

## Based on the foregoing stipulation of facts, the hearing panel made the following conclusions of law:

"1. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to act with reasonable diligence and promptness in representing Ms. Best when she failed to either file a motion to have a case manager appointed or withdraw from the case. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"2. KRPC 1.4 provides:

'(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

'(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

The Hearing Panel concludes that the Respondent violated KRPC 1.4(a) when she failed to respond to Ms. Best's telephone messages and letters. The Hearing Panel also concludes that the Respondent violated KRPC 1.4(b) when she failed to provide sufficient information to allow Ms. Best to make informed decisions regarding whether to pursue the appointment of a case manager.

"3. Kan. Sup. Ct. R. 207(b) provides as follows:

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

The Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b) by failing to provide a written response to the complaint or otherwise comply with the requests of the Office of the Disciplinary Administrator and the disciplinary investigator."

The hearing panel therefore made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated her duty to her client to provide adequate communication and diligent representation. Additionally, the Respondent violated her duty to the profession to cooperate in disciplinary investigations.

"*Mental State.* The Respondent negligently violated her duty to her client. The Respondent knowingly violated her duty to the profession.

"*Injury.* It is difficult to assess whether Ms. Best suffered any actual injury. Certainly, Ms. Best suffered potential injury.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. On July 10, 2000, the Respondent was informally admonished for violating KRPC 1.1, . . . KRPC 1.4, and Kan. Sup. Ct. R. 207.

"Pattern of Misconduct. The Respondent engaged in a pattern of misconduct when she repeatedly failed to communicate with Ms. Best and when she repeatedly failed to respond to the complaint filed in this case.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in 1986. At the time the Respondent committed the misconduct in this case, she had been practicing law for thirteen years. Accordingly, the Hearing Panel concludes that at the time she committed the misconduct, the Respondent had substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Dishonest or Selfish Motive. There was no evidence presented that the Respondent's misconduct was motivated by dishonesty or selfishness.

"Previous Good Character and Reputation. The Respondent is an active and productive member of the bar in Topeka, Kansas. She enjoys the respect of her peers and her friends. Additionally, the Respondent generally possesses a good character and reputation as evidenced by the testimony of the Honorable Daniel Mitchell and Randy Baird and several letters received by the Hearing Panel.

"Remorse. Clearly, at the hearing on this matter, the Respondent expressed genuine remorse for engaging in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following standards:

'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

Standard 4.43.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.'

Standard 7.2.

"Although Standard 7.2 suggests that suspension is appropriate in this case, the Hearing Panel concludes that public censure is the appropriate sanction based on the compelling factors in mitigation and the language of Standard 4.43. Accordingly, the Hearing Panel unanimously recommends that Respondent be publicly censured."

We find there is clear and convincing evidence establishing the violations found by the hearing panel. We agree with the panel's recommendation concerning disposition. In so doing, we adopt the findings and recommendation of the panel as set forth above.

IT IS THEREFORE ORDERED that the respondent be disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2000 Kan. Ct. R. Annot. 224) for her violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of the proceeding be assessed to the respondent.